**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DASHAUN LAQUINN JAMISON | |
| Appellant | No. 1262 MDA 2013 |

Appeal from the Judgment of Sentence March 25, 2013
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s): CP-40-CR-00000068-2011

BEFORE: GANTMAN, P.J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.: **FILED MAY 05, 2015**

Appellant DaShaun Laquinn Jamison appeals from the judgment of sentence entered in the Northumberland County Court of Common Pleas. Appellant's counsel filed an **Anders**[1] brief and a motion for leave to withdraw as counsel. We conclude Appellant's claim that he was denied his right to counsel is not frivolous. We further find counsel failed to comply with the technical requirements of **Anders** and **Santiago**[2] as to Appellant's denial of his right to counsel claim. We, therefore, deny counsel's motion for leave to withdraw as counsel and remand for counsel to prepare an

_____

[1] **Anders v. California**, 386 U.S. 738 (1967).

[2] **Commonwealth v. Santiago**, 978 A.2d 349 (Pa.2009).

advocate's brief as to whether Appellant was denied the right to counsel. We find the remaining issues raised in the **Anders** brief to be frivolous.

On November 29, 2010, a criminal complaint charged Appellant with two counts of aggravated assault, two counts of criminal attempt (aggravated assault), and two counts of simple assault.[3]  Police Criminal Complaint at 2-3.  The complaint alleged that on November 18, 2010, Appellant, a prisoner at the State Correctional Institution at Coal Township, assaulted two correctional officers.  **Id.**  On January 4, 2011, public defender James Rosini represented Appellant at a preliminary hearing.  On March 31, 2011, Mr. Rosini filed a motion to withdraw, alleging Appellant failed to cooperate with counsel, insisted counsel file frivolous motions, and requested counsel issue subpoenas to witnesses who would not assist the defense.  The motion also stated Appellant requested that Mr. Rosini withdraw.  Motion to Withdraw, 3/31/2011, at ¶¶ 2-7.  Although the trial court scheduled a hearing on the motion to withdraw for April 21, 2011, it granted the motion on April 15, 2011, ordered the court administrator to appoint new counsel, and cancelled the hearing.  Order, 4/15/2011.[4]

---

[3] 18 Pa.C.S. § 2702(a)(3), 901(a), and 2701(a)(1), respectively.

[4] The **Anders** brief, the Commonwealth, and the trial court repeatedly state Mr. Rosini withdrew because he left the Public Defender's Office.  N.T., 3/8/2012, at 3, 7; N.T., 5/23/2012, at 3 (stating John Broda was Appellant's second counsel); Opinion, 1/6/2014, at 1 n.2; **Anders** Brief at 9; Appellee's Brief at 3.  Further, the trial court did not rely on Mr. Rosini's motion to
*(Footnote Continued Next Page)*

J-A10035-15

Following Mr. Rosini's departure, Michael Seward from the Public Defender's Office represented Appellant.

On July 7, 2011, the trial court scheduled Appellant's trial for November 7, 2011. Trial Order, 7/7/2011. The trial court ordered that pretrial motions be filed within 60 days. *Id.* On October 14, 2011, Appellant filed a *pro se* motion for appointment of new counsel. On November 4, 2011, Mr. Seward filed a motion for leave to withdraw from representation. On November 10, 2011, Mr. Seward filed an application for a trial continuance because he was awaiting additional discovery. Application for Trial Continuance, 11/10/2011. On January 10, 2012, the trial court scheduled a pretrial conference for February 3, 2012. Criminal Pretrial Order, 1/10/2011.[5] On February 6, 2012, Appellant filed a *pro se* application for a continuance requesting additional time to obtain counsel. Application for Continuance, 2/6/2012. That same day, the trial court appointed John Broda, also from the Public Defender's Office, to represent Appellant.[6]

*(Footnote Continued)* —————————

withdraw when it found Appellant was not denied his right to counsel. Opinion, 1/6/2012, at 1-2.

[5] The trial court had issued prior orders scheduling trial and/or pretrial proceedings on various dates in January and February.

[6] This order was dated January 3, 2012, but filed February 6, 2012. It states the trial court "previously granted Defendant's Motion to Remove Counsel/Defense Counsel's Motion to Withdraw." Order, 2/6/2012.

- 3 -

On February 10, 2012, Mr. Broda filed a motion for leave to withdraw as counsel. On March 8, 2012, the Honorable Robert B. Sacavage conducted a hearing on Mr. Broda's motion. At the hearing, the following occurred:

THE DEFENDANT: Your Honor, the rationale for Mr. Seward was that he wasn't communicating with me, he was disagreeing as far as receiving certain evidence that I think we would need for trial, he didn't want to go to trial.

THE COURT: So I granted your motion and appointed somebody else for you.

THE DEFENDANT: But I feel as though Mr. Broda – he's from the same office – and as soon as I talked to Mr. Broda, he said him and Mr. Seward had already talked about it. I said I felt as though it's a conflict that he's from the same office. I challenged Mr. Seward on his – his competence and I just feel that it's a conflict of interest.

. . .

MR. BRODA: I don't believe it's the nature of that. Again, I believe it's a personal conflict with Mr. – as [Mr.] Seward's – I don't mean to put words in Mr. Jamison's mouth, but I believe he wasn't happy with Mr. Seward's representation in the way he was handling his case.

THE DEFENDANT: That's correct.

MR. BRODA: So that's –

THE COURT: Why do you think Mr. Broda can't help you?

THE DEFENDANT: Because the conflicts office, I just don't think that they're correctly representing me. And like I said, I feel as though Mr. Seward felt some type of way as far as how I challenged his – you know, his competence. And like I said, as soon as I talked to Mr. Broda, it seemed like they already had discussion about my case already [sic].

THE COURT: Well, I would expect that they would have to, whoever the prior counsel was. In fact –

- 4 -

THE DEFENDANT: No, I mean –

THE COURT: -- the rules of ethics require[] that a lawyer who is assuming the case –

THE DEFENDANT: I don't mean it – I mean, as far as not wanting to take this case to trial, that's the first thing, it don't seem like he had any confidence in it. Like Mr. Seward has already said like this is a loss or its not triable, I should take a plea. They want me to take an open plea. I feel as though it's a conflict in that aspect, that's just how I feel.

. . .

MR. BRODA: I did advise him of my opinion of his defense.

THE DEFENSE: His opinion was the same as Mr. Seward. That's why I feel as though they already talked and Mr. Seward's already, you know, put in his mind that I need to take a plea. His opinion was the same thing, if not exactly what Mr. Seward was saying. That's just how I feel.

THE COURT: Okay.

THE DEFENDANT: I know I can't pick what attorney I have, I understand that, I just want an attorney that's going to represent me. I'm ready for trial. That's the first thing I say, I'm trying to go to trial. I'm not trying to take no plea. So for someone to keep trying to convince me to take a plea — I'm not guilty, why should I plead guilty to something I didn't do.

I also got a problem, Mr. Broda said he's been to trial like fifteen times and only won two. Well, I need a lawyer that's going to represent me and willing — that has experience in trial, that's going to fight for me.

THE COURT: Well, the Court will — and this is your last opportunity to reconsider your decision because I am not inclined to just keep removing lawyers and appointing somebody that you're going to wait us out until you are happy with [sic]. There are two individuals — three individuals, the first one left the case through other employment; the second one, you disagreed with their performance; now, what I'm hearing here is another

performance-related argument. So you either have Mr. Broda, or if you don't want him around, I will allow him to withdraw and appoint him as standby counsel and you can represent yourself.

THE DEFENDANT: That's my only choice?

THE COURT: Well, you can take Mr. Broda. I'm not going to appoint another person. But I will assign — if you're going to be representing yourself, I will require him to be in the courtroom, anytime you can reconsider bringing him back and he will be readily available for you. So, do you want him to withdraw?

THE DEFENDANT: I don't want to represent myself, I don't know the law, I guess I'm forced to stay with Mr. Broda.

THE COURT: Mr. Broda, you will continue to – Mr. Broda, I will deny your motion to withdraw.

N.T., 3/8/2012, at 3-8.

On March 23, 2012, the trial court scheduled a pretrial conference for May 4, 2012, jury selection for May 7, 2012, and trial for May 18, 2012. Criminal Pretrial Order, 3/23/2012. On May 7, 2012, the Honorable Charles H. Saylor conducted jury selection for Appellant's trial. At the jury selection, Mr. Broda requested a sidebar conference, which Appellant attended. The following exchange occurred:

MR. BRODA: Yes, Your Honor. Mr. Jamison told me in his letter before and he's telling me again to make a statement to the judge. I mentioned that – he's saying he's not ready to proceed to trial. I mean, judge made a pretrial determination –

. . .

MR. BRODA: Okay. Your Honor, the judge made a determination that the case is ready to go to trial. Mr. Jamison is saying he's not ready to proceed.

THE COURT: And the – well, what's the basis.

- 6 -

MR. BRODA: Well, he's wanting – asking me to file motions and saying he has inmates from other institutions he wants to have subpoenaed and that hasn't been completed for this case to go to trial.

THE COURT: When is the trial scheduled for?

MR. BRODA: May 18th.

THE COURT: So that's 11 days off so we will pick the jury today and whatever motions you – you want to file between now and then, you can do so but we will – I think perhaps many of them can be between now and the 18th, but we'll proceed today.

N.T., 5/7/2012, at 3-4. The jury selection briefly resumed before the following exchange occurred at sidebar:

THE DEFENDANT: I don't understand why it wasn't brought up at the pretrial. If it was brought up at pretrial then this all would have been addressed. I would like all this to be on record because of dealing with Mr. Broda.

I requested Mr. Broda to file a *habeas corpus* on the grounds that the Commonwealth didn't present enough evidence on the charges held for trial. He failed to do that. I requested Mr. Broda to file an omnibus pretrial motion[] requesting an appointment of an investigator for this case. He failed to do that. Dismiss all the charges and information. He failed to do that. Sequester enough evidence. He failed to do that.

Continuously prepare for trial, he's failed to do that. I requested Mr. Broda to file a subpoena for [personnel] files of all officers and CO's that would testify in this case to prepare for my defense.

THE COURT: Let me – you're reading from something, right?

THE DEFENDANT: Yes, sir.

THE COURT: How about if you just submit that?

THE DEFENDANT: What?

- 7 -

THE COURT: How about if you just submit that?

THE DEFENDANT: This is a rough draft, Your Honor. It's just a rough draft. I prepared it for pretrial. It's not that long. It's only –

THE COURT: What I told Mr. Broda was we pick the jury and then we'll consider whatever motions he wants to file.

THE DEFENDANT: But he's not filing any. He's telling me –

THE COURT: He has the opportunity to file these motions.

THE DEFENDANT: But he's telling me he's not going to file them, Your Honor.

THE COURT: Well –

THE DEFENDANT: He's told me straight up.

THE COURT: We're going to pick the jury today.

THE DEFENDANT: All right. So if we pick the jury today and then it would be standby and then if we don't get these filed, the things that we're requesting at the time of trial, will it be continued?

THE COURT: We will deal with those all those motions at some point, but we're picking the jury.

THE DEFENDANT: I don't understand that because then with the rules of court I thought these motions have to be filed before – before – seven days before pretrial, which is why I told Mr. Broda to file them. So how is it that we file them between now and a trial?

THE COURT: We'll deal with any other motions at that time. The jury will be picked.

THE DEFENDANT: I would at least like to read the rest of this so that it could be on the record.

THE COURT: Okay. Keep your voice down.

THE DEFENDANT: All right. Where did I stop at? I stopped at Mr. – I was requesting Mr. Broda to file a subpoena for [personnel] files of all officers and CO's that would testify in this case and prepare for a defense. I

think I have a right to those files. Mr. Broda failed to do that. He failed to contact me since the denial of the motion for Mr. Broda to withdraw as defense counsel. Mr. Broda has not spoken to –

MR. TOOMEY: What was that last one?

THE DEFENDANT: Mr. Broda has failed to contact me since the denial of the motion to withdraw as he – when we had the motion to withdraw as my defense counsel. Mr. Broda has not spoken with me about any trial strategy.

I requested Mr. Broda to file subpoenas to have any of the officers who can testify for this case. He's failed to do that. And the last one, Mr. Broda has failed to file transportation orders for all the prison witnesses that's needed for trial. I requested Mr. Broda to provide me with a copy of the [b]ill of [p]articulars and he failed to do that.

I filed a motion myself requesting the [b]ill of [p]articulars and I still haven't gotten that.

THE COURT: I understand – is that [President] Judge Sacavage who already ruled this that it's ready for trial?

MR. TOOMEY: Your Honor, we have – we had – he filed a motion that he wanted to represent himself or Mr. Broda to withdraw.

THE DEFENDANT: May I ask –

MR. TOOMEY: And the judge gave him the option of either he's going to have Mr. Broda as his attorney or he could represent himself and have Mr. Broda as standby. He elected at that time – correct me if I'm wrong.

THE DEFENDANT: I elected to keep Mr. Broda because I don't know nothing about the law. But at the same time Mr. Broda is refusing – he's telling me straight to my face that he's not going to file none of these motions.

THE COURT: Did you tell that – at the earlier sidebar with Mr. Broda, didn't you say that [President] Judge Sacavage ruled that this case was ready to go to trial?

MR. TOOMEY: He said it's – he said it's ready for trial. I said, it's an old case. November of 2010 was when the

incidents happened and I'm ready for trial. I have my witnesses subpoenaed, Mr. Broda had subpoenaed certain inmates from the State Correctional Institution, I filed a motion [in] limine that I wanted an offer of proof as to what these inmates were going to say because their inmates and it's a security risk for the courthouse to have all these SCI inmates in our county jail and county facilities waiting for testimony. I was coordinating with the Correctional Institution of Coal Township to have a video conference to determine that the admissibility –

THE COURT: But question was [sic] these issues have already been ruled on?

THE DEFENDANT: No, they have not.

MR. TOOMEY: He has not filed any other motions.

THE COURT: There's no –

THE DEFENDANT: And that is because Mr. Broda is refusing to file these motions. How can I prepare my – how can I fight this case if I don't have the records of the officers? This is case is based [sic] solely on the testimony of the officers.

THE COURT: But all the – all the witnesses are being brought in.

THE DEFENDANT: No.

THE COURT: You've subpoenaed everybody and is [sic] ready to go?

MR. TOOMEY: Yes, sir.

THE COURT: And you have some witnesses that you want to subpoena?

THE DEFENDANT: Yes. I have more witnesses. Staff members that were there.

THE COURT: You can do that by May 18th so we can proceed.

THE DEFENDANT: He's telling me no.

THE COURT: Okay. I made –

- 10 -

THE DEFENDANT: Are you going to order him to do that? He's telling me no. Are you going to order him to file the motions that I asked and subpoena the witnesses?

THE COURT: I can't order him to do that. We're here for purposes of jury selection and we're going to proceed with the jury selection. That's all.

N.T.5/7/2012, at 6-12. Following the above exchange, Mr. Broda represented Appellant at jury selection.

On May 11, 2012, while still represented by Mr. Broda, Appellant filed a "Motion for the Subpoena of Witnesses" and a "Motion for the Subpoena of Documents and Records," and on May 15, 2012, Appellant filed an "Omnibus Pretrial Motion for Relief."

On May 21, 2012,[7] Appellant filed a *pro se* motion to withdraw counsel and Mr. Broda filed a motion to withdraw as counsel. That same day, Appellant filed a motion for continuance. On May 23, 2012, the Honorable William Harvey Wiest held a hearing. The following exchange occurred:

[THE COURT]: Mr. Jamison, again, on the same day that Mr. Broda filed, May 21st, you filed a handwritten motion to withdraw counsel, I believe, requesting the same thing, that Mr. Broda no longer be involved in your case and that you be allowed to proceed *pro se*; is that correct?

[APPELLANT]: That is correct.

[THE COURT]: Okay. Anything else you would like to say about that?

_____

[7] It appears Appellant's trial was continued from the May 18, 2012 trial date. The certified record, however, does not contain an order continuing the trial or setting a new trial date.

[APPELLANT]: Well, I was wondering, I was requesting within the motion – I was asking for a new counsel. If that's not for not, then I will proceed *pro se*. I was already shot down once by [President Judge] Sacavage for new counsel, so if I'm going to be shot down again, I'll proceed *pro se*.

[THE COURT]: It's the second counsel you have had. When your counsel is appointed, you don't have the choices that you do if you are hiring counsel on your own.

I'm not going to appoint new counsel for you, but I will appoint Mr. Broda to remain as stand-by counsel. You will be conducting your own trial, but he will be in the courtroom, so that if at any point you have any questions you would like to confer with him on, you will have that opportunity. But he will not take an active role in it; only to consult with you.

[APPELLANT]: All right. I understand that. I understand that. Would it be possible that I be appointed another different stand-by counsel? Me and Mr. Broda just don't see eye to eye. He disagree with me on everything.

[THE COURT]: No, sir. Again, this is your second counsel. We have done what we needed to in appointing counsel for you. We do not have to keep appointing new ones.

In addition – I know this is not on the schedule – but you had several motions filed, handwritten motions filed, the 11th of May two of them and one on the 15th of May, entitled motion for subpoena of witnesses, motion for subpoena of documents and records, and the last one omnibus pretrial motion for relief.

[APPELLANT]: That's what I filed for a continuance on.

[THE COURT]: That is part of the omnibus pretrial. I'm going to deny all of these motions on the basis that they are not timely filed. We have a jury selected. We are going to go ahead with the jury trial on Friday. All the witnesses that you subpoenaed, the arrangements have been made for them to be here, so it will not be delayed. It will occur on Friday as scheduled.

- 12 -

[APPELLANT]: I disagree that it is timely filed now to represent myself [sic]. I know I have to – how am I not supposed to be prepared for trial, seeing how Mr. Broda and I disagreed on the motions? You yourself told me you gave me leave of court at jury selection to file the motions.

[THE COURT]: I did not conduct jury selection.

MR. TOOMEY: It was Judge Saylor.

MR. JAMISON: He gave me leave of court to file all the motions necessary. That's the reason I filed them myself, because Mr. Broda refused to file them.

. . .

THE COURT: So all these motions are going to have to be ruled upon?

. . .

[THE COURT]: Are you prepared, Mr. Jamison, to defend those motions or to present those motions and any testimony required with them now?

[APPELLANT]: No, I am not, Your Honor.

. . .

THE COURT: After consideration with my law clerk and the statement made by Judge Saylor at the time of jury selection, I'm going to grant [Appellant] an opportunity to present his motions. We will schedule a half day for it as soon as possible. Of course, you will have notice of when that half day is going to be. It probably will not be until sometime next month.

Of course, that means a delay in the trial.

N.T., 5/23/2012, at 2-5.

Appellant filed additional *pro se* pre-trial motions. On August 30, 2012, Judge Saylor held a hearing on Appellant's motions, which he denied.

On February 11, 2013,[8] prior to jury selection, the following exchange occurred in the chambers of President Judge Sacavage:

> THE COURT:  Now, you have a right to remain silent.  You understand your rights of a trial.  You don't have to put on a defense, you don't have to call any witnesses.  If you choose to present a defense, then – and you choose to testify, your character then comes into –
>
> THE DEFENDANT:  I understand that.
>
> THE COURT:  – issue.  Also the – you have – I think I discussed this with you at an earlier time.  Your decision to represent yourself is up to you.  You're an intelligent, competent adult, and – but you must be responsible and follow the same rules of trial that anyone has to.
>
> THE DEFENDANT:  I understand, sir.
>
> THE COURT:  So –
>
> MR. TOOMEY:  Was there a waiver of his right to have an attorney represent him, a written waiver?
>
> THE DEFENDANT:  I waived my rights in front of –
>
> MR. TOOMEY:  I thought there may have to be a written waiver.
>
> THE DEFENDANT:  Well, I filed the motion myself to withdraw counsel and everything.  I have the motion here, I believe, Your Honor.
>
> THE COURT:  Here's an August 21st, 2012, footnote number one.  Defendant's motion to withdraw counsel was filed May 21st, 2012, is moot as the defendant has elected

---

[8] Between September 2012 and February 2013, Appellant filed various motions, which Judge Saylor ruled upon in a January 25, 2013 order.  He granted Appellant's motion for communication, denied his motion for reconsideration, denied his motion for disqualification, and granted in part and denied in part his motion for additional juror information questionnaires.  Order, 1/25/2013.  In addition, trial was continued on various occasions.

to represent himself and [Mr.] Broda has been appointed standby.

THE DEFENDANT: Did we have a hearing that day in front of [Judge] Wiest, and he asked me, do I want to represent myself. Because I had filed the motion and then we had the hearing. Remember we had the hearing, and he asked me if I wanted to represent myself, so I understand everything.

THE COURT: I think the District Attorney's asking about – it's a one page written form. The form advises you of your right to counsel. It discusses what an attorney can do for you. I will go over the contents of it at this point.

The Court has to make a decision that you're – has to agree that you should represent yourself because you are making an intelligent, voluntary, competent, knowing decision to do so, and that had never really come into play. My observations of you are that you are competent, intelligent, and you're doing this voluntarily.

An attorney – you had previous attorneys before representing you, so in your experience you have some idea, I take it, as to what attorneys can do for you. Is that correct?

THE DEFENDANT: Yes, I do.

THE COURT: An attorney can help pick a jury, can file motions on your behalf. And this is a 2011 case. There have been many motions filed and disposed of. Your attorney can cross-examine witnesses that are brought against you. An attorney can [negotiate] a plea agreement, could represent you at trial, represent you on appeal, make objections to evidentiary matters, to procedural matters, so that they can be preserved for later review at the appellate court level.

He can make opening statements, closing arguments during the trial, and generally represent you and protect your rights under the constitution at all stages of the proceedings. And you are aware of this?

THE DEFENDANT: Yes.

- 15 -

THE COURT: And there has been attorneys [sic] appointed, and at this juncture Mr. Broda was appointed by this Court in August to act as standby counsel. Correct?

THE DEFENDANT: Yes.

THE COURT: And he is here. He's in the room here at the time. And, Mr. Broda, for the record you are still standby counsel, are you not?

MR. BRODA: Yes, Your Honor.

THE COURT: So you will be sitting in the courtroom behind the defendant.

MR. BRODA: Yes, Your Honor.

THE COURT: If you wish to change your mind, take him on as counsel, you may do so at any time.

THE DEFENDANT: I understand, Your Honor.

THE COURT: I'm satisfied that he can represent himself.

N.T., 2/11/2013, at 10-13.

A jury convicted Appellant of one count of aggravated assault and acquitted him of all other charges. Verdict, 2/25/2013. On March 25, 2013, the trial court sentenced Appellant to three to six years' imprisonment. On April 5, 2013, Appellant filed post-sentence motions, which the trial court denied on May 13, 2013. On July 11, 2013, a letter from Appellant to President Judge Sacavage was docketed.[9] That same day, the trial court issued an order treating the letter as a motion for allowance of appeal *nunc pro tunc*, granting the motion, and ordering the clerk of courts to file

_____

[9] The letter stated Appellant filed a notice of appeal on May 28, 2011 and had the prison cash slips as proof of filing.

Appellant's notice of appeal. On August 2, 2013, Appellant filed a *pro se* concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and the trial court issued its Rule 1925(a) opinion on January 6, 2014.

On May 30, 2014, Appellant filed an application for appointment of counsel. On June 18, 2014, this Court ordered that the trial court appoint counsel to represent Appellant on appeal. The trial court appointed counsel on July 21, 2014. On November 14, 2014, counsel filed an **Anders** brief and a motion for leave to withdraw.

The **Anders** brief raises the following issues:

1. Denial of Right to Counsel: The [trial court] erred in not providing counsel to [Appellant] at trial.

2. Excluded Hearsay: The [trial court] erred in excluding certain hearsay evidence which [Appellant] wished to use at trial.

3. Motion to Suppress: The [trial court] erred in not suppressing video footage.

4. Brady Violation: The trial court erred in not sanctioning the Commonwealth for untimely disclosure of certain video footage.

5. Inconsistent Verdict: The guilty verdict should be thrown out as inconsistent with the acquittal on the other charges.

6. Evidence Not in Possession of the Jury: The [trial court] erred in not allowing the jury to possess certain evidence in deliberations.

7. Weight and Sufficiency of the Evidence: The verdict was contrary to the weight and sufficiency of the evidence.

*Anders* Brief at 6 of 20.

When appellate counsel files an *Anders* brief, we must conduct an independent review of the record to ensure there are no non-frivolous arguments that could be raised on appeal.[10] *See Santiago*, 978 A.2d at 359 (reviewing court must make independent determination of merits of appeal).

Our Supreme Court has stated the:

> [L]ack of merit in an appeal is not the legal equivalent of frivolity. *Anders* "appears to rest narrowly on the distinction between complete frivolity and absence of merit. The latter is not enough to support either a request by counsel to withdraw, nor the granting of such a request by the court."

*Commonwealth v. Greer*, 314 A.2d 513, 514 (Pa.1974) (quoting ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 8.3, commentary at 297 (Approved Draft, 1971)); *accord Commonwealth v. Edwards*, 906 A.2d 1225, 1231 (Pa.Super.2006). Further, this Court has stated:

> Our system of appellate review is based upon the notion that an adversarial process will best advance the interests of the parties and the development of the law. In this process, each side is expected to make its best argument(s) and the appellate court decides which argument is of greater merit. It appears that unless a position is without question defeated by existing caselaw, an appointed counsel should advance the best argument

---

[10] Counsel must also comply with the technical requirements of *Anders* and *Santiago*. We discuss these requirements below.

he/she is capable of constructing and allow the appellate court to make the ultimate determination that the argument lacks merit. It may be that counsel believes that the argument advanced is unlikely to ultimately prevail. Nevertheless, this does not mean that the appeal is wholly frivolous.

**Commonwealth v. Kearns**, 896 A.2d 640, 647 (Pa.Super.2006).

Appellant's first issue maintains Appellant was denied his right to counsel. We find this issue is not wholly frivolous.

The trial court found:

> [Appellant] first claims that his right to effective assistance of counsel was violated and claims that he was allowed to proceed *pro se* without the benefit of a Court colloquy as to the knowing, voluntary and intelligent waiver of counsel. The facts underlying [Appellant's] representation status belie his claim. [Appellant] was represented by three separate attorneys during the course of proceedings in this case.[2]
>
> > [2] [Appellant's] first attorney, from the Public Defender's office, left the office for another position, at which point [Appellant] was assigned to [Mr.] Michael Seward. At some point, [Appellant] and his new counsel did not see eye to eye, at which point his request for new counsel was granted and he was assigned to [Mr.] John Broda. [Appellant] then attempted several times to dismiss [Mr.] Broda, culminating in his status as set forth above.
>
> Of equal importance is that the request to proceed *pro se* be unequivocal. While this court has not considered when a request to proceed *pro se* is deemed "unequivocal" a review of federal case law reveals that the courts generally consider a myriad of factors in concluding whether a request was unequivocal including: whether the request was for hybrid representation, **see, e.g.,** [**United States v. Callwood**, 66 F.3d 1110, 1113 (10th Cir. 1995)], or merely for the appointment of standby or advisory counsel, [**United States v. Baker**, 84 F.3d 1263, 1267 (10th Cir.1996)]; the trial court's response to a request, [**United States v. Hernandez**, 203 F.3d 614

(9th Cir. 2000)]; whether a defendant has consistently vacillated in his request, ***Brown v. Wainwright***, 665 F.2d 607 (5th Cir. 1982); and whether a request is the result of an emotional outburst, ***Jackson v. Ylst***, 921 F.2d 882 (9th Cir. 1990); ***see also Reese v. Nix***, 942 F.2d 1276 (8th Cir. 1991) (finding that request that was merely an impulsive response to the trial court's denial of a request for new counsel was not unequivocal). The essence of these cases is that the inquiry surrounding whether a request to proceed *pro se* is unequivocal is fact intensive and should be based on the totality of the circumstances surrounding the request.

***Commonwealth v. Davido***, [868 A.2d 431 (Pa.2005)].

Here, [Appellant] elected to proceed with standby counsel, and standby counsel was available to him at all times. He consulted with standby counsel several times during various proceedings, up to and including jury selection and trial. Thus, [Appellant's] right to counsel was not violated, and the [trial court] was not obligated to conduct a colloquy, although it in fact did so.

Opinion, 1/6/2012, at 1-2.[11]

The ***Anders*** brief maintains, without citing any case law, that Appellant was not denied his right to counsel. It notes Appellant had three court-appointed attorneys. The ***Anders*** brief reasons that the trial court appointed stand-by counsel, Appellant was not aggrieved by the stand-by counsel arrangement, Appellant did not object when the court reminded him that he chose to proceed *pro se*, and Appellant "ably represented himself at trial and won acquittal on 5 of 6 counts." The ***Anders*** brief further states

_____

[11] The trial court opinion is not paginated. All page numbers are supplied by this Court.

that "as the [trial court] note[d] in its [o]pinion, Mr. Broda was present throughout and was consulted by [Appellant]," and "[the trial court] had conducted an adequate colloquy with [Appellant]." **Anders** Brief at 9-10. Counsel did not conduct any analysis of the colloquy the court allegedly conducted; he merely relied on the trial court's conclusion that it conducted an adequate colloquy.[12]

The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution provide defendants with the right to counsel for his or her defense. **Commonwealth v. Lucarelli**, 971 A.2d 1173, 1178 (Pa.2009) (quoting **Rothgery v. Gillespie County**, --- U.S. ---, 128 S.Ct. 2578, 2583 n. 8, 171 L.Ed.2d 366 (2008) and **Commonwealth v. McDonough**, 812 A.2d 504, 506 (Pa.2002)). The right to counsel, however, is not absolute. **Id.** (quoting **Commonwealth v. Randolph**, 873 A.2d 1277, 1282 (Pa.2005)).

A defendant who seeks court-appointed counsel "does not have a right to choose the particular counsel to represent him." **Commonwealth v. Rucker**, 761 A.2d 541, 542 n.1 (Pa.2000) (citing **Commonwealth v. Moore**, 633 A.2d 1119, 1125 (Pa.1993)). After counsel has been appointed,

---

[12] The Commonwealth concedes the trial court did not conduct a proper colloquy and argues Appellant forfeited his right to counsel. Appellee's Brief at 3 (noting the colloquy did not comply with all requirements of Pa.R.Crim.P. 121).

the defendant cannot "change to other assigned counsel unless a substantial reason exists for the change." *Id.* (citing Pa.R.Crim.P. 316(c)(ii)).

A defendant can waive or forfeit his right to counsel. *Lucarelli*, 971 A.2d at 1178-79. Our Supreme Court has explained:

> Waiver is "an intentional and voluntary relinquishment of a known right." By contrast, forfeiture . . . does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct."

*Id.* at 1179 (internal citations omitted).

If a defendant seeks to waive his right to counsel, "the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." *Commonwealth v. Phillips*, 93 A.3d 847, 852 (Pa.Super.2014) (citing Pa.R.Crim.P. 121(c)). The waiver colloquy must "contain a clear demonstration of the defendant's ability to understand the questions posed to him during the colloquy." *Id.* (quoting *Commonwealth v. McDonough*, 812 A.2d 504, 507 n.1 (Pa.2002)). A trial court must "fully advise the accused [of the nature and elements of the crime] before accepting waiver of counsel." *Id.* at 853 (quoting *Commonwealth v. Clyburn*, 42 A.3d 296, 299 (Pa.Super.2012) (emphasis deleted and alteration in original). Pennsylvania Rule of Criminal Procedure 121 governs waiver of the right to counsel and provides:

> (2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2). The trial court must further inquire "about the defendant's age, educational background, and basic comprehension skills." **Phillips**, 93 A.3d at 853 (citing Pa.R.Crim.P. 121(C)). Further, this Court reviews "the totality of the relevant circumstances only after we decide the trial court has met the minimum requirements of Rule 121, to determine whether the defendant's waiver of the constitutional right to counsel was a knowing, voluntary, and intelligent waiver." **Id.** at 854.

In **_Lucarelli_**, our Supreme Court held that Rule 121 does not apply where a defendant forfeits his right to counsel. 971 A.2d at 1179. The Rule applies only where the defendant waives his right to counsel. **_Id._** The Court held a defendant forfeits his right to counsel where his "course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so." **_Id._** It further noted that:

> Upon examining the jurisprudence developed by other jurisdictions regarding forfeiture of the right to counsel, we observe that defendants have been held to have forfeited the right to counsel where they have either engaged in physically abusive and threatening conduct, or have engaged in dilatory conduct. **_See e.g., Minnesota v. Lehman_**, 749 N.W.2d 76, 81-82 (Minn.Ct.App.2008), _review denied,_ 2008 Minn. LEXIS 478 (Minn. filed August 5, 2008) (collecting cases and holding that defendant forfeited his right to court-appointed counsel where defendant attacked and beat the attorney in open court); **_Bultron v. State_**, 897 A.2d 758 (Del.2006) (holding that defendant forfeited his right to counsel where he engaged in ongoing abuse of his attorney and requiring defendant to proceed _pro se_ at trial); **_Wilkerson v. Klem_**, 412 F.3d 449, 454 (3d Cir. 2005) (holding that a defendant who had been duly notified of the date of his trial, who had been advised to obtain counsel in sufficient time to be ready for trial, and who appeared on the scheduled date without counsel and with no reasonable excuse for his failure to have counsel present, forfeited his right to counsel).

**_Id._** at 1179-80.

In **_Commonwealth v. Kelly_**, this Court found a defendant who was appointed counsel forfeited his right to counsel. 5 A.3d 370 (Pa.Super.2010). We reasoned:

Kelly was a criminal defendant who had been unwilling to cooperate with all three counsel assigned to him; who argued all counsel were incompetent because they refused to argue what he believed was the law; who, the day after his *pro se* motion to withdraw his first guilty plea was granted, filed *pro se* an omnibus pre-trial motion seeking suppression of evidence on a ground the trial court had already addressed (validity of search warrant); who wanted a counsel, but only one who would please him; who treated appointed counsel with disdain; whose trial had been already postponed because he could not agree with assigned counsel (counsel 2); who had been warned by the trial court that failure to cooperate with assigned counsel (counsel 3) would result in him representing himself *pro se* at trial; who sought to have other counsel appointed to him (who would have been counsel 4) and postpone the trial instead of trying to cooperate with counsel 3; and who clearly was not interested in listening closely [to] what [the trial judge] was telling him, consumed as he was in making his point counsel were ineffective and he knew the law better than assigned counsel.

*Id.* at 381-82.[13]

_____

[13] The court in **Kelly** noted the case differed from **Lucarelli** and the other Pennsylvania forfeiture cases because, in **Kelly**, the defendant was eligible for court-appointed counsel.  5 A.3d at 379 n.7.

The **Kelly** court also noted a "hybrid situation" where a defendant loses his right to counsel, stating:

[T]here is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture.  Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.

....

*(Footnote Continued Next Page)*

The trial court did not conduct a proper colloquy of Appellant at any stage of the proceedings. Although President Judge Sacavage inquired as to some elements of Rule 121 prior to the February 11, 2013 jury selection, his colloquy was not complete. He did not ensure Appellant understood the nature of the charges, the elements of each charge, or the permissible range of sentences of the charges. He did not inform Appellant there were possible defenses that counsel might be aware of which would be permanently lost if not raised or that Appellant had rights that would be lost permanently if not timely raised, and he did not advise Appellant his right to challenge errors would be lost permanently if not timely asserted. N.T., 2/11/2012, at 10-13. Further, the trial court did not inquire about the defendant's age, educational background, and basic comprehension skills. Because the trial court failed to comply with the minimum requirements of Rule 121, and failed to inquire as to Appellant's background, Appellant did not waive his

*(Footnote Continued)* ─────────────

> These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se.* These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se.* Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

*Id.* at 379 (quoting **United States v. Goldberg**, 67 F.3d 1092, 1100-01 (3d Cir. 1995)).

- 26 -

right to counsel. **_See Phillips_**, 93 A.3d at 855 (vacating judgment of sentence and remanding for further proceedings where trial court failed to meet minimum requirements of Rule 121 and failed to question appellant on qualitative aspects of waiver of counsel at critical stages of proceedings).

Because Appellant did not waive his right to counsel, his constitutional right to counsel was violated unless he forfeited this right. **_See Lucarelli_**, 971 A.2d at 1179. Appellant filed _pro se_ motions to remove two court-appointed attorneys because he disagreed with their assessment of his case, they refused to advance legal arguments Appellant believed had merit, and Appellant believed a conflict of interest existed because they both were from the Public Defender's Office.[14] There is no evidence, however, that Appellant treated either counsel with disrespect or disdain. Further, although Appellant filed motions which delayed trial, it is not clear that any delay was intentional. **_See_** N.T., 3/8/2012, at 3-8; N.T., 5/7/2012, at 3-4, 6-12. It appears Appellant may not have known counsel did not file the motions he requested until after the pretrial conference. N.T., 5/7/2012, at 6-12. Nor is there evidence Appellant "engaged in physically abusive and threatening conduct." **_See Lucarelli_**, 971 A.2d at 1179. Although the issue of whether

---

[14] As noted above, Appellant's first court-appointed counsel filed a motion to withdraw, but the trial court did not rely on this motion when finding Appellant was not denied his right to counsel. Motion to Withdraw, 3/31/2011; Opinion, 1/6/2014.

Appellant was denied his right to counsel may not merit relief on appeal, it is not wholly frivolous.

We further note that, as to the issue concerning Appellant's right to counsel, appointed counsel did not comply with the technical requirements of **Anders** and **Santiago**. Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in **Santiago**. The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Counsel must also provide a copy of the **Anders** brief to the appellant, together with a letter that advises the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Nischan**, 928 A.2d 349, 353 (Pa.Super.2007). Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super.2007).

Appellant's counsel's motion for leave to withdraw as counsel states: "Counsel has carefully considered this matter and can find no basis which is not frivolous to appeal [Appellant's] conviction for one count of aggravated assault." Motion for Leave to Withdraw as Counsel, at ¶ 2; *see also* Letter from James L. Best, Esq. to DaShaun Laquin Jamison, dated 11/10/2014 ("Letter to Appellant"). Counsel notified Appellant of the withdrawal request, supplied him with copies of the motion for leave to withdraw and the *Anders* brief, and sent Appellant a letter explaining his right to proceed *pro se* or with new, privately-retained counsel to raise any additional points or arguments that Appellant believed had merit. *See* Motion for Leave to Withdraw as Counsel at ¶ 5; Letter to Appellant. Counsel's *Anders* brief provides a "Statement of the Facts," which briefly summarizes the factual and procedural history of the case. The section, however, is incomplete and does not contain citations to the record. *Anders* Brief at 7. For six of the seven arguments, it provides citations to the record, refers to evidence of record that might arguably support the issues raised on appeal, provides citations to relevant case law, states counsel's conclusion that the appeal is wholly frivolous, and states his reasons for concluding the appeal is frivolous. *Id.* at 10-20. However, for the issue regarding whether Appellant was denied his right to counsel, the *Anders* brief provides no citations to case law and states that the trial court conducted an adequate colloquy, even though it failed to do so. *Id.* at 9-10. Accordingly, in addition to finding Appellant's argument concerning his right to counsel is

- 29 -

non-frivolous, we conclude counsel failed to comply with the technical requirements of **Anders** for that issue.[15]

Appellant's remaining issues are frivolous.

Appellant's second issue maintains the trial court erred when it failed to admit into evidence a written report authored by Captain Charles Stetler prior to Captain Stetler's testimony and failed to admit testimony from Appellant's mother, father, and grandmother about telephone conversations they had with individuals who did not testify. **Anders** Brief at 10-11.

"[T]he admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." **Commonwealth v. Hoover**, 107 A.3d 723, 729 (Pa.2014) (quoting **Commonwealth v. Rivera**, 983 A.2d 1211, 1228 (Pa.2009)). Pennsylvania Rule of Evidence 802 provides that "[h]earsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Hearsay is defined as an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Pa.R.Evid. 801. Both Captain Stetler's report and the proposed testimony of Appellant's family members constitute inadmissible

---

[15] Although the "Statement of the Facts" section of the brief does not contain citations to the record, the argument sections for the remaining six issues contain citations to the record. **Anders** Brief, at 10-20. Therefore, the brief as to the remaining sections substantially complies with **Anders** and **Santiago**.

hearsay. The court acted within its discretion when it refused to admit Captain Stetler's report until he testified. N.T., 2/19/2013, at 172. Further, the trial court acted within its discretion when it refused to admit the testimony of Appellant's family members. N.T., 2/19/2013, at 223. This claim is frivolous.

Appellant's third issue claims the trial court erred in denying his motion to suppress a videotaped recording of the incident. Appellant claims the prison staff tampered with the video captured by the prison facility cameras, that the videotape included only a portion of the relevant incident, and that it failed to include an earlier encounter between the prison guards and Appellant. *Anders* Brief at 11; N.T., 8/30/2012, at 11-12. We review a denial of a suppression motion to determine "whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa.Super.2002) (quoting *Commonwealth v. McClease*, 750 A.2d 320, 323 (Pa.Super.2000)). Judge Saylor determined at the August 30, 2012 pre-trial hearing that Appellant presented no evidence the prison staff manipulated the videotape. N.T., 8/30/2012. Further, the Commonwealth presented testimony from an electronics technician from the prison who stated the tape was extracted from digital recordings made by the facility's cameras and the facility does not have the ability to edit the videotapes. N.T., 8/30/2012, at 6-7. Judge Saylor found Appellant's claims that the prison staff included only a portion of the relevant incident "may be

arguments at trial," but were not a basis for suppression. *Id.* at 12. The trial court acted within its discretion in admitting the videotape, and Appellant's claim is frivolous.

In his fourth issue, Appellant alleges the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), when it failed to disclose a portion of a video and audio recording from a handheld camera ("video/audio recording")[16] that would have captured the moments prior to the incident at issue.[17] *Anders* Brief at 11-12, N.T., 2/15/13, at 162-193.

Pursuant to *Brady*, "the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights." *Commonwealth v. Com Ly*, 980 A.2d 61, 75 (Pa.2009). To establish a *Brady* violation, a defendant must "demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the

_____

[16] The prison had cameras at different locations throughout the prison facility. The facility cameras did not have audio. N.T., 2/15/2013, at 164. In addition, a guard captured a portion of the incident on a handheld camera, that had video and audio. *Id.* at 164-65. The guard had the camera because a prisoner housed near Appellant needed to be recorded when he exited his prison cell and the guards had taken that prisoner to the shower prior to the incident. *Id.*

[17] It appears the Commonwealth produced a portion of the video/audio recording that captured the incident, but not the moments leading up to the incident, which Appellant claimed would have captured relevant conversation. N.T., 2/15/13, at 162-193.

prosecution, to the prejudice of the defendant." *Id.* (quoting *Commonwealth v. Gibson*, 951 A.2d 1110, 1126 (Pa.2008)).

At the end of the first day of trial, after the video/audio recording of the incident was admitted, the trial court ordered the Commonwealth to attempt to locate the portion of the video/audio recording that preceded the admitted portion. N.T., 2/15/2013, at 184-86. At the next trial day,[18] the Commonwealth admitted the requested portion of the video/audio recording from the handheld camera. N.T., 2/19/2013, at 4. Appellant was able to cross-examine the witness regarding the video/audio recording.

The trial court found, although the "Commonwealth may have inadvertently at best, caused the initial suppression of evidence," Appellant did not contend he was prejudiced by the evidence or establish the evidence had exculpatory or impeachment value. Opinion, 1/6/2014, at 5. This was not error, and Appellant's *Brady* claim is frivolous.

In his fifth issue, Appellant argues the verdict was inconsistent because the jury found him guilty of aggravated assault, but acquitted him of simple assault, a lesser included offense. *Anders* Brief at 12. Although "often perplexing," inconsistent verdicts "are not considered mistakes and do not constitute a basis for reversal." *Commonwealth v. Thomas*, 65 A.3d 939, 944 (Pa.Super.2013) (quoting *Commonwealth v. Stokes*, 38 A.3d

---

[18] The first day of trial was a Friday. The next day of trial was a Tuesday, as the Monday was a court holiday.

846, 855 (Pa.Super.2011)). "[T]he rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." *Id.* at 944-45 (quoting *Stokes*, 38 A.3d at 855). The trial court did not err in denying relief based on an inconsistent verdict and we agree the claim is wholly frivolous.

Appellant claims in his sixth issue that the trial court erred in refusing to send certain items to the jury room during deliberations. *Anders* Brief at 13. The Pennsylvania Rules of Criminal Procedure provide: "the jury may take with it such exhibits as the trial judge deems proper." Pa.R.Crim.P.646(A). "Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." *Commonwealth v. Barnett*, 50 A.3d 176, 194 (Pa.Super.2012) (quoting *Commonwealth v. Merbah*, 411 A.2d 244, 247 (Pa.Super.1979)). "The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury." *Id.* (quoting *Commonwealth v. Dupre*, 866 A.2d 1089, 1103 (Pa.Super.2005)).

Appellant requested that Captain Stetler's report be sent to the jury. The court denied this request, noting only portions of the report were read into the record. N.T., 2/19, at 167-68. Appellant also requested that a document he wrote to the superintendent be sent to the jury, and the trial

court denied the request because it would place undue emphasis on the exhibit. *Id.* at 168-69.[19] The trial court did not abuse its discretion in denying Appellant's request to send exhibits with the jury, and this claim is frivolous.

Appellant's last claim maintains the evidence was insufficient to support the verdict and the verdict is against the weight of the evidence. *Anders* Brief at 13.

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003), *affirmed*, 870 A.2d 818 (2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Lehman*, 820 A.2d at 772. Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved

---

[19] The trial court agreed with Appellant that, under its reasoning, it would deny Appellant's request to send any document to the jury. N.T., 2/19/2013, at 369-70. Appellant noted his objection for the record. *Id.* at 370.

by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.*

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. *DiStefano*, 782 A.2d at 582. Further, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

A jury convicted Appellant of aggravated assault of a correctional officer. To sustain an aggravated assault of a correctional officer conviction, the Commonwealth must establish the appellant "attempt[ed] to cause or intentionally or knowingly cause[d] bodily injury to [an officer or employee of a correctional institution], in the performance of duty." 18 Pa.C.S. § 2702(a)(3). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. Here, Correctional Officer Todd Kepner testified that, while working in the restrictive housing unit of SCI Coal Township, Appellant punched him in the jaw. N.T., 2/15/2013, at 94, 96. Officer Kepner experienced redness and pain in the jaw. *Id.* at 99. The jury was entitled to believe Correctional Officer Kepner's testimony, which was sufficient to establish the elements of aggravated assault beyond a reasonable doubt. *Commonwealth v. Richardson*, 636 A.2d 1195, 1196

(Pa.Super.1994) (evidence sufficient where officer testified Appellant's punch broke officer's glasses, caused officer to stumble backwards, and caused pain for next few days). Appellant's sufficiency of the evidence claim is frivolous.

Whether a verdict is against the weight of the evidence is "addressed to the discretion of the trial court." *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (citing *Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (2000)). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, 'the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 1055 (quoting *Widmer*, 744 A.2d at 752). Courts should award "a new trial . . . when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (quoting *Commonwealth v. Brown*, 648 A.2d 1077, 1189 (Pa.1994)).

Further, "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Clay*, 64 A.3d at 1055 (quoting *Widmer*, 744 A.2d at 753). "Because the trial judge had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when

reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id.* (quoting **Widmer**, 744 A.2d at 753).

The jury heard testimony from 17 witnesses, including the victims of the alleged assaults, eyewitnesses, and the investigating officer. It viewed 32 exhibits, including witness statements and videotape recordings depicting the events. The trial court found the verdict not against the weight of the evidence. Opinion, 1/6/2014, at 7. The trial court acted within its discretion and Appellant's weight of the evidence claim is frivolous.

Our independent review of the record reveals no additional non-frivolous claims.

Case remanded for the filing of an advocate's brief consistent with this memorandum. Counsel shall file the advocate's brief within 45 days of the issuance of this opinion. The Commonwealth shall have 30 days from the filing of Appellant's brief to file an Appellee's brief. Jurisdiction retained.

President Judge Gantman joins in the memorandum.

Judge Mundy concurs in the result.