**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Jason David KEARNS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 2005.

Filed March 31, 2006.

Robert J. Trambley, Meadville, for appellant.

Francis J. Schultz, Assistant District Attorney, Meadville, for Commonwealth, appellee.

BEFORE: DEL SOLE, P.J., BENDER, J., and McEWEN, P.J.E.

OPINION BY BENDER, J.:

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant, Jason David Kearns, after he was convicted in a jury trial of involuntary manslaughter, aggravated assault, endangering the welfare of children, escape and resisting arrest. Appellant's counsel, the Public Defender's Office of Crawford County, has filed a petition to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981). After reviewing counsel's submissions and the certified record, we deny counsel's petition to withdraw and remand for the filing of an advocate's brief and completion of the record.

¶ 2 The charges in the instant case stem from the death of S.P., the nearly three year-old daughter[1] of Appellant's girlfriend, Charyn Parsons. Appellant was residing with Ms. Parsons and S.P. in a basement apartment located in Conneautville, Crawford County, during the relevant time period and was involved in the use and manufacture of methamphetamine. During the afternoon and evening of March 4, 2004, Appellant, Ms. Parsons and S.P. traveled throughout Erie and Crawford Counties stopping at grocery, drug or other stores which carried cold medicine to purchase decongestant tablets for use in the manufacturing of methamphetamine. During this period of time, both Appellant

---

1. The record reveals that S.P. was five weeks shy of her third birthday when she suffered the injuries that ultimately proved fatal.

and Ms. Parsons ingested methamphetamine on at least three or four occasions.

¶ 3 After Appellant obtained a bag full of over-the-counter cold medicine, the three returned to their residence between 11:00 p.m. and midnight, whereupon Ms. Parsons fed S.P. some cereal and then attempted to put the child to bed. S.P. was a bit restless and wanted her favorite stuffed animal, which had been left in the car. Ms. Parsons then went outside to retrieve the stuffed animal and left her daughter in bed. *Id.* at 65. Ms. Parson's testified that when she left to retrieve the stuffed animal, S.P. was alert and lying in bed with no indication that there was anything wrong with her. *Id.* Ms. Parsons was gone for approximately three to five minutes. Upon returning, she found her daughter lying on the floor in the doorway of the bedroom in a state of unconsciousness and with blood in her saliva. *Id.* at 67, 69. During the time that Parsons left her daughter, Appellant was the only person in the apartment. *Id.* at 65–66.

¶ 4 At first Ms. Parsons believed the child had fallen out of bed and would be all right. However, soon Ms. Parsons became alarmed upon perceiving that S.P.'s breathing and heart rate seemed abnormal. Ms. Parsons called 911 and the paramedics arrived and took her daughter to the hospital. S.P. died on April 6, 2005, having never regained consciousness. At trial, Rachel Berger, M.D., a specialist in Pediatrics and Child Abuse Medicine, testified that the victim had multiple injuries. *Id.* at 10–13. These included a fractured skull, bleeding in the brain, a liver laceration, and multiple bruises on her ears, face, and chest. *Id.* at 14.

¶ 5 At the conclusion of trial, a jury found Appellant guilty of the aforementioned offenses and, on May 4, 2005, the trial court sentenced Appellant to a period of incarceration of 15¼ to 31 years. With respect to the charge of involuntary manslaughter, the court imposed a sentence of 72 to 144 months' imprisonment reflecting the court's conclusion that the charge of involuntary manslaughter was to be graded as a felony of the second degree pursuant to 18 Pa.C.S. § 2504(b).

¶ 6 Appellant filed a motion to modify sentence asserting that the sentence imposed on the involuntary manslaughter charge was illegal in two respects. First, the maximum sentence of 12 years' imprisonment exceeded the statutorily authorized maximum sentence for a second degree felony which, at 18 Pa.C.S. § 1103, is set at 10 years' imprisonment. Second, the sentence was illegal as it exceeded the statutorily authorized maximum sentence of five years imprisonment for a misdemeanor of the first degree. This argument was built upon the decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and is tied to the provisions of 18 Pa.C.S. § 2504(b), which indicate that involuntary manslaughter is to be graded as a misdemeanor of the first degree unless the victim is under 12 years of age and is in the care, custody or control of the person who caused the death, in which case the offense is to be graded as a felony of the second degree. Appellant contended that the holding issued in *Apprendi* required the facts, upon which the enhanced grading hinged, to be put to, and decided by, a jury. On May 16, 2005, the court granted Appellant's motion to modify in part. Acknowledging that the sentence of 12 years exceeded the statutory maximum of 10 years' imprisonment, the court modified the sentence on involuntary manslaughter to five to 10 years' imprisonment. Appellant's aggregate sentence after correction was 14 ¼ to 29 years' imprisonment. The instant appeal was then filed and counsel

has submitted a petition to withdraw and an *Anders* brief.

■ ¶ 7 In order for counsel to withdraw from an appeal pursuant to *Anders* and its Pennsylvania equivalent, *McClendon,* the following requirements must be met:

(1) counsel must petition the court for leave to withdraw stating that after making a conscientious examination of the record it has been determined that the appeal would be frivolous;

(2) counsel must file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or *amicus curiae* brief; and

(3) counsel must furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention.

*Commonwealth v. Ferguson,* 761 A.2d 613, 616 (Pa.Super.2000). After Superior Court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether or not the appeal is wholly frivolous. *Commonwealth v. Townsend,* 693 A.2d 980, 982 (Pa.Super.1997).

■ ¶ 8 Appellant's counsel has filed a petition stating that he has made a conscientious review of the record and that the appeal is wholly frivolous. The petition states that he sent a letter to Appellant which informed him of his right to file a *pro se* brief raising additional issues, or retain new counsel. The petition also states that a copy of the *Anders* brief was sent along with the letter. This letter is attached to counsel's petition. Accordingly, we conclude that counsel has complied with the first and third *Anders* requirements. *See Commonwealth v. Millisock,* 873 A.2d 748, 750–51 (Pa.Super.2005).

■ ¶ 9 Although appointed counsel fulfilled the mechanical requirements for successfully seeking leave to withdraw his representation, we cannot agree with the assessment that the appeal is wholly frivolous. Indeed, we believe the sole issue briefed, that Appellant's sentence violated the decision in *Apprendi,* is an issue that appears to have at least arguable merit that compels briefing by an interested advocate as opposed to one seeking to withdraw his representation due to his assessment that the appeal is "wholly frivolous." Our reasoning follows.

¶ 10 In *Apprendi,* the United States Supreme Court reviewed a New Jersey sentencing statute that provided for the "enhancement" of a sentence if the sentencing court found that the condition(s) for enhancement was proven by a preponderance of the evidence. The condition for enhancement in *Apprendi* was that " 'the defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' N.J.S.A. 2C:44–3(e)." [2] *State v. Apprendi,* 159 N.J. 7, 10, 731 A.2d 485, 486 (1999). Under the provi-

---

**2.** The statutory provision reads:

The court shall, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime, ... to an extended term if it finds, by a preponderance of the evidence, the grounds in subsection e.

. . .

e. The defendant in committing the crime acted, at least in part, with ill will, hatred or bias toward, and with a purpose to intimidate, an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity.

*State v. Apprendi,* 304 N.J.Super. 147, 150, 698 A.2d 1265, 1266 (1997).

sions of the statute, after a conviction or entry of a guilty plea to a qualifying crime, the state prosecutor could move the court to impose an enhanced sentence. A sentencing hearing would follow, complete with the hearing of testimony and the receipt of evidence, after which the court would decide whether the state had proven the existence of the condition for enhancement by a preponderance of the evidence.

¶ 11 In Apprendi's case, Apprendi pled guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of third-degree unlawful possession of an anti-personnel bomb. Under New Jersey law, a second degree felony carried a range of punishment of five to ten years' imprisonment. As part of the plea agreement, the State reserved the right to request imposition of an enhanced sentence under N.J.S.A. 2C:44–3(e) with respect to one of the unlawful possession of a firearm offenses. That request was made after the court accepted the plea agreement and a sentencing hearing followed. The sentencing court concluded, after hearing relevant evidence, that the state had proven by a preponderance of the evidence that Apprendi's crime of possessing a firearm for an unlawful purpose was motivated by "racial bias."[3] Pursuant to the above finding, the court was empowered to impose a sentence from 10 to 20 years' imprisonment on the count in question,[4] and the court thus imposed a sentence of 12 years' imprisonment. Apprendi appealed the decision, first to the Superior Court of New Jersey and then to the New Jersey Supreme Court, contending that allowing the imposition of the enhanced sentence upon the State's proof by a preponderance of the evidence violated the Due Process clause. However, ultimately, the appellate courts of New Jersey disagreed. Relying in part upon *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), they concluded that the State of New Jersey had, like Pennsylvania before it, chosen to make racial bias a "sentencing factor" and that Due Process concerns did not compel a different result.

¶ 12 On appeal to the United States Supreme Court, the Court, breaking away from the stance taken in *McMillan*, was disinclined to allow New Jersey's explicit characterization of racial bias as a sentencing factor to determine the constitutional analysis. Rather, the Court recognized that traditionally "facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense," *Apprendi*, 530 U.S. at 483 n. 10, 120 S.Ct. at 2359 n. 10. The Court then concluded that the Due Process Clause contained in the Fourteenth Amendment to the United States Constitution, in combination with the Sixth Amendment right to trial by jury, required that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond reasonable doubt. The Court recited its holding thusly:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Id.* 530 U.S. at 490, 120 S.Ct. at 2362. In reaching the conclusion that the New Jersey sentencing enhancement statute violat-

---

**3.** "Racial bias" is the term New Jersey courts seemingly use to characterize the statutory enhancement factor quoted above.

**4.** The effect of the enhancement was to allow punishment as if the crime were graded a first degree felony.

ed the Constitution, the Majority found the view expressed in the Concurring Opinion of Justice Stevens in *Jones v. United States*, 526 U.S. 227, 252–53, 119 S.Ct. 1215, 1228–29, 143 L.Ed.2d 311 (1999), persuasive and endorsed that view as law:

It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.

*Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2363.

■ ¶ 13 The present case sits on all fours with *Apprendi*. Under the provisions of 18 Pa.C.S. § 2504(b), involuntary manslaughter is graded as a misdemeanor of the first degree unless the victim is under 12 years of age and is in the care, custody or control of the person who caused the death, in which case the offense is to be graded as a felony of the second degree. A misdemeanor of the first degree carries a maximum penalty of five years' imprisonment whereas a felony of the second degree carries a maximum penalty of ten years' imprisonment. Thus, under *Apprendi*, the factual determinations that the victim was under twelve years of age and in the care, custody or control of the person who caused the death exposes the charged defendant to greater maximum punishment and, as such, under *Apprendi*, these factual determinations constitute elements of the offense of involuntary manslaughter graded as a felony of the second degree and must be either admitted by the defendant or found by a jury beyond reasonable doubt.

■ ¶ 14 The first difficulty we have in allowing counsel to withdraw at this juncture is the fact that we have not been forwarded a complete trial transcript. Since Appellant proceeded to a jury trial, it would appear elementary that he did not admit the predicate for imposing felony two liability upon him. However, missing are the instructions to the jury. As such, we cannot conclude whether or not the jury "found" the key fact that changed the involuntary manslaughter conviction from a first degree misdemeanor to a second degree felony. Additionally, the lack of a complete transcript also prevents us from discharging our obligation to conduct an independent review of the record to determine whether there exists any issue(s) of arguable merit to pursue on appeal. In this respect alone, we would be justified in denying counsel's petition for leave to withdraw. *See Commonwealth v. Vilsaint*, 2006 PA Super 27, 893 A.2d 753. Beyond this shortcoming, we are not persuaded by counsel's explanation for why the issue is frivolous.

¶ 15 In his letter to Appellant, appointed counsel asserts that *Apprendi* was satisfied because Appellant was charged with endangering the welfare of a child and convicted of that offense. Counsel states "a jury could only find you guilty of that charge if they found that you violated a duty of care while supervising the child." Letter from counsel to Appellant, 9/13/05, at 1. First, counsel's statement is built upon the presumption that a factual finding extrapolated from one conviction could be used to satisfy an enhancement or escalation on another charge altogether. This argument seems to invoke an intra-case application of collateral estoppel. To our knowledge, there is no case concluding that *Apprendi* can be satisfied in this manner.

¶ 16 Secondly, presuming that a finding critical to a conviction on one charge could be utilized to satisfy *Apprendi* on another charge, a comparison of the elements of endangering the welfare of children and the provision that elevates the grading of

involuntary manslaughter reveals that the two are not identical.

### § 4304. Endangering welfare of children

(a) OFFENSE DEFINED.—A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. § 4304.

### § 2504. Involuntary manslaughter

(a) GENERAL RULE.—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

(b) GRADING.—Involuntary manslaughter is a misdemeanor of the first degree. Where the victim is under 12 years of age and is in the care, custody or control of the person who caused the death, involuntary manslaughter is a felony of the second degree.

18 Pa.C.S. § 2504. Endangering the welfare of a child requires a finding that the child was under age 18 whereas the escalation provision of involuntary manslaughter requires a finding that the child was age 12 or under. Although the evidence was that the victim was two years old, it is likely that the jury instruction tracked the statutory language and that the jury was instructed that they must find that the child was under 18. Similarly, endangering the welfare of children uses the term "or other person supervising the welfare of a child" while the escalation provision uses the language "in the care, custody or control." This language is not identical and arguably proof of one may not necessarily constitute proof of the other. Thus, even if some form of intra-case collateral estoppel applied, there is a question as to whether Appellant's conviction for endangering the welfare of a child would satisfy the element in question. As such, it appears to us that this is not a case that can be deemed "wholly frivolous." [5]

---

**5.** The recent en banc decision of this Court in *Commonwealth v. Kleinicke*, 2006 PA Super 48, 895 A.2d 562, would not affect the above analysis as the en banc panel specifically distinguished the facts of *Kleinicke* from *Apprendi*.

*Kleinicke* involved the applicability of mandatory minimum sentence provisions of 18 Pa.C.S. § 7508. Specifically, where a defendant's conviction of violating 35 P.S. § 780–113(f) was based upon the possession or manufacture of marijuana, section 7508 required the imposition of a mandatory minimum sentence of five years' imprisonment "when the amount of marijuana involved is at least 50 pounds, or at least 51 live plants." 18 Pa. C.S. § 7508(a)(1)(iii). Kleinicke argued that the decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),—the United States Supreme Court's follow-up decision to *Apprendi*—dictated that the number of marijuana plants be submitted to and found by a jury upon a beyond reasonable doubt standard. Contrary to this stance, the *Kleinicke* court imposed a five year sentence based upon its own finding that Kleinicke had manufactured more than 50 marijuana plants and over the jury's failure to unanimously agree that the number of plants manufactured had exceeded 50 plants.

The *Kleinicke* Majority acknowledged the precedent of *Apprendi*, but found that the mandatory minimum sentence provisions of section 7508 did not violate *Apprendi* because the judicial factfinding required by section 7508 did not increase the maximum penalty applicable to Kleinicke, which due to his conviction of a misdemeanor of the first degree, was set at up to five years' imprisonment. The *Kleinicke* Majority stressed that *Apprendi* applies only when the additional factfinding increased the potential maximum punishment the defendant faced and indicated that *Blakely* merely clarified the meaning of the term "statutory maximum" upon which *Apprendi* hinges.

¶ 17 At this juncture, we believe it would be beneficial to revisit the concept behind seeking leave to withdraw as counsel due to an assessment that the appeal is "wholly frivolous." In *Commonwealth v. Greer*, 455 Pa. 106, 314 A.2d 513, 514 (1974), our Supreme Court made the following statement as to the assessment that an appeal is wholly frivolous:

It should be emphasized that lack of merit in an appeal is not the legal equivalent of frivolity. *Anders* "appears to rest narrowly on the distinction between complete frivolity and absence of merit. The latter is not enough to support either a request by counsel to withdraw, nor the granting of such a request by the court." ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 8.3, Commentary at 297 (Approved Draft, 1971).

■ ¶ 18 In the present case, Appellant's counsel made an assessment that Appellant's appeal was wholly frivolous despite the fact that there were no cases that definitively defeated the *Apprendi* matter. The explanation of this assessment in counsel's letter to Appellant reads like an argument for the Commonwealth. Our system of appellate review is based upon the notion that an adversarial process will best advance the interests of the parties and the development of the law. In this process, each side is expected to make its best argument(s) and the appellate court decides which argument is of greater merit. It appears that unless a position is without question defeated by existing caselaw, an appointed counsel should advance the best argument he/she is capable of constructing and allow the appellate court

to make the ultimate determination that the argument lacks merit. It may be that counsel believes that the argument advanced is unlikely to ultimately prevail. Nevertheless, this does not mean that the appeal is wholly frivolous.[6]

¶ 19 For the above reasons, we deny counsel's petition for leave to withdraw and direct counsel to file an advocate's brief. We also direct counsel to order a full transcript of the proceedings below and have the transcripts forwarded to this Court.

¶ 20 Petition for leave to withdraw as counsel denied. Counsel is directed to file an advocate's brief within 30 days of the filing of this Opinion and to supplement the record so as to allow complete appellate review. The *Commonwealth* shall have 30 days from the filing of Appellant's Brief to file an Appellee's Brief. Jurisdiction retained.

■

---

**6.** We note as well that trial counsel preserved a challenge to the discretionary aspects of sentencing yet present counsel has deemed the appeal wholly frivolous despite the fact that Appellant received a maximum sentence for involuntary manslaughter and a sentence for aggravated assault that exceeded the aggravated range of the guidelines. Certainly, under this factual scenario, an argument that would not be patently frivolous could be forwarded that the court's sentence was excessive.