J.S52009/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY THORNTON, | : | |
| | : | |
| Appellant | : | No. 792 EDA 2013 |

Appeal from the Judgment of Sentence February 15, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0010214-2011

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED MAY 11, 2015**

Appellant, Troy Thornton, appeals from the judgment of sentence of life imprisonment imposed in the Philadelphia County Court of Common Pleas after a jury found him guilty of, *inter alia*, first-degree murder.[1] Appellant's counsel has petitioned to withdraw from representation and filed an **Anders**[2] brief identifying the following issues: (1) the weight of the evidence; (2) the court's failure to instruct the jury on self-defense; (3) the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] **See Anders v. California**, 386 U.S. 738 (1967); **see also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

sufficiency of the evidence; and (4) the court's admission of consciousness of guilt evidence.[3] We affirm and grant counsel's petition to withdraw.

Appellant's conviction arises from the January 12, 2011 shooting of Charles Johnson ("Decedent") near the intersection of Musgrave Street and Washington Lane in Philadelphia. The Commonwealth established the following background to the shooting, before Appellant's alleged involvement. Decedent's sister, Charlyne Johnson, was pregnant with the child of Dante Williams. Dante was also involved with another female, "Kia." Kia's other suitor, "Jarrell," allegedly harassed and threatened Dante. Sean Jenkins, the boyfriend of Dante's mother, Selina Williams, intervened and assaulted Jarrell. According to Jenkins and Selina, they and Dante continued receiving threats after the attack on Jarrell and feared retaliation.

Charlyne Johnson learned of Dante Williams' relationship with Kia and discussed the matter with Decedent. They considered assaulting Dante, but according to Charlyne, she told Decedent she wanted to talk with Dante first.

On January 12, 2011, Decedent and Charlyne drove to a gathering at the Williamses' home on the 500 block of Washington Avenue.[4] On the way,

---

[3] We have reordered the issues discussed in the **Anders** brief.

[4] Selina Williams testified that Dante Williams, Charlyne Johnson, Dante's friend, "Garlino," a female friend, "Mikey," and a male friend, "Triz," were at her house on the night of the shooting. We note that Mikeal Coles also referred to Appellant as "Triz." However, the record established that the individual referred to by Selina Williams as Triz was not Appellant. All references herein to Triz do not refer to Appellant.

they picked up three individuals—Anton Johnson, their cousin, Dion Garner, a friend, and Donte Johnson, their older brother. Decedent dropped off Charlyne at the Williamses' residence and drove to another location where he allegedly dropped off his older brother.

At approximately 10:22 p.m., Decedent, along with Anton Johnson and Dion Garner, returned to the intersection of Musgrave Street and Washington Lane and parked the car on Musgrave Street. There was a steak knife in the car and duct-tape in the glove compartment. Footage from a surveillance camera for the next fifteen minutes showed the car moving between two parking spots on the southern side of Musgrave Street, then parking on the northern side of Musgrave Street, just beyond the frame of the camera. On two occasions, an individual exited the car, meandered in the area, and returned to the car.[5]

The car and its occupants raised suspicion among the occupants of the Williamses' residence. Sean Jenkins called Mikeal Coles and asked him to come to the residence, because "something was going to go down." N.T., 2/6/13, at 29. Coles arrived with two males, later identified as Appellant and Codefendant, Sean Jones. Charlyne Johnson attempted to leave the

---

[5] Although there was surveillance footage of the scene, the shooting occurred out of the camera's frame. Moreover, the quality of the video did not permit the viewer to discern identifying features of the individuals depicted beyond light or dark clothing. Lastly, the time stamp on the video was slow by almost eleven hours and forty-seven minutes. N.T., 2/13/13, at 48-49.

residence with Dante Williams. Selina Williams stopped her son and arranged for another individual, "Triz," to escort Charlyne. Charlyne and Triz left the home, but returned shortly thereafter. According to Selina, Triz stated that the individuals by the car were trying to be "stickup boys." N.T., 2/7/13, at 75. Charlyne sent text messages to Decedent warning him to exit the car or leave the area until midnight. She did not tell the occupants of the home that her brother was outside.

The surveillance camera footage of Musgrave Avenue showed two individuals emerge from the alley that led to the back of the Williamses' home at 10:36 p.m. One individual approached the car from the sidewalk and walked out of the camera's view. The second individual lagged behind, and then walked into the roadway by the car parked in front of Decedent's car. A third individual appeared at the entrance of the alleyway.

Anton Johnson testified, in relevant part, as follows. He was in the right rear seat of the four-door car, closest to the curb, with his door halfway open. N.T., 2/5/13, at 89. Decedent was in the driver's seat, and Dion Garner was in the left rear seat, behind the driver. *Id.* at 83, 87. Anton was preparing to smoke marijuana by removing the tobacco from a cigar. *Id.* at 89. A male approached and stopped next to the car on the right-hand side. *Id.* at 90. The male asked, "Who are you . . . Who y'all?" *Id.* at 91. Anton replied, "Who you?" *Id.* Anton stated the male stepped backwards

and began shooting. *Id.* Anton identified Appellant in court as the shooter. *Id.* at 90-91.

Anton Johnson and Dion Garner escaped unharmed through the rear driver-side door and fled the scene on foot. Decedent, who was in the driver's seat, suffered gunshot wounds to the lateral aspect of the right side of his chest, the lateral aspect of the right side of his hip, and the outer aspect of his right elbow, as well as a graze wound to his right groin. Decedent escaped from the car and ran, but was mortally wounded. He was found on the sidewalk along Washington Lane, approximately one-half block from Musgrave Street.[6]

Six .380/9mm automatic casings—one stamped Spear, the other five stamped Remington—were located near the front right-side fender of car. Three .380/9mm bullets were recovered from inside the car. Two .380/9mm bullets were recovered from Decedent's chest and hip. A .38/.357 revolver bullet was lodged in the car's radiator. Four of the .380/9mm bullets were determined to have been fired from the same gun. The .38/.357 bullet was fired from a different gun. One bullet, recovered from the driver's door, was too deformed to analyze for comparative purposes.

---

[6] The surveillance camera footage showed three individuals—allegedly Decedent, Anton Johnson, and Dion Garner—fleeing toward Washington Lane. It also showed two individuals—allegedly Appellant and Codefendant— fleeing along Musgrave Street back toward the alleyway. The third individual, who had remained at the entrance of the alleyway, allegedly Mikeal Coles, appeared to retreat into the alley.

The following day, January 13, 2011, Anton Johnson went to the police station and provided his first account of the shooting, as well as a general description of the shooter. Five days later, on January 18th, Dion Garner was interviewed and gave a general description of the shooter.

On January 25, 2011, Sean Jenkins and Selina Williams gave separate statements to police. Both Jenkins and Selina discussed the ongoing dispute with Jarrell, and Jenkins admitted he called Mikeal Coles on the night of the shooting. Jenkins and Selina stated Coles came to the residence with two individuals. Coles and the two individuals left the home for up to twenty minutes before returning to the backdoor. Jenkins and Selina identified Appellant and Codefendant from Pennsylvania Department of Transportation photographs and reported that Appellant and Codefendant described their participation in the shooting after they returned to the home. On January 31, 2011, six days after Jenkins and Williams identified Appellant, Anton Johnson identified Appellant from a photographic array.

Criminal complaints charging Appellant and Codefendant with conspiracy, murder, and related offenses were filed on March 7, 2011. The case was assigned to the fugitive squad and wanted posters of Appellant and Codefendant were circulated and published in the newspaper. Codefendant surrendered on April 12, 1011. Appellant was arrested on June 29, 2011, after a routine traffic stop of a vehicle in which he was a passenger.

The Commonwealth filed a motion to consolidate its cases against Appellant and Codefendant, which the trial court granted on November 16, 2011. Appellant, who was represented by privately retained counsel, Robert Patrick Link, Esq. ("trial counsel"), proceeded to a joint jury trial with Codefendant commencing February 4, 2013. Appellant presented no evidence in his case-in-chief and elected not to testify.[7] On February 14, 2013, the trial court instructed the jury on first- and third-degree murder, and the jury retired for deliberations. The following day, February 15th, the jury found Appellant guilty of first-degree murder, carrying firearms in public in Philadelphia,[8] and possessing an instrument of crime,[9] and not guilty of conspiracy.[10]

The trial court sentenced Appellant immediately after the verdict. The court ordered Appellant to serve a term of life imprisonment for murder and imposed concurrent sentences of three-and-a-half to seven years and two-and-a-half to five years for carrying firearms in public in Philadelphia and possessing an instrument of crime, respectively. Trial counsel orally moved

---

[7] Codefendant did not testify, but presented character witnesses.

[8] 18 Pa.C.S. § 907.

[9] 18 Pa.C.S. § 6108.

[10] 18 Pa.C.S. § 903(a). The jury found Codefendant guilty of third-degree murder and not guilty of conspiracy.

to withdraw from representation immediately after the imposition of sentence. The court denied trial counsel's motion.

Trial counsel did not file post-sentence motions, but timely filed a notice of appeal on March 14, 2013. Trial counsel filed a petition to withdraw from representation, and this Court, on April 26, 2013, remanded the matter for the appointment of new counsel. Present counsel, James Anthony Lammendola, Esq., entered his appearance. On September 19, 2013, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement. Present counsel timely requested, and was granted, multiple extensions of time to file a Rule 1925(b) statement. On January 2, 2014, present counsel filed a statement identifying Appellant's intended issues, but averring an appeal would be frivolous and he intended to file an *Anders* brief in this Court. *See* Pa.R.A.P. 1925(c)(4). The trial court submitted a Rule 1925(a) opinion, but did not consider the issues identified in present counsel's Rule 1925(c)(4) statement.

Present counsel's *Anders* brief identifies the following issues, which we have reordered as follows:

> Were the verdicts against the weight of the evidence because the testimony given by several of the witnesses was contradictory, lacking in verisimilitude, and simply not believable?
>
> The trial court committed an abuse of discretion when it denied Appellant's request that the court give a self-defense instruction.

> The evidence was insufficient to support Appellant's first-degree murder conviction because the Commonwealth failed to prove that Appellant acted with malice in so far as the evidence showed that Appellant acted in self-defense after the victims intimated that they had weapons.
>
> The trial court committed an abuse of discretion by permitting the Commonwealth to introduce evidence of flight in the absence of evidence showing that Appellant was aware that he was wanted by the police or that there was a warrant out for his arrest.

*Anders* Brief at 22, 27, 31, 35. Appellant has not responded to present counsel's *Anders* brief or petition to withdraw either *pro se* or with the assistance of new counsel. The Commonwealth, despite requesting an extension of time, did not file an appellee's brief in this first-degree murder appeal.

Preliminarily, we must address whether present counsel has complied with the procedures for seeking withdrawal on direct appeal. *See Commonwealth v. Garang*, 9 A.3d 237, 240 (Pa. Super. 2010).

> [T]he three requirements that counsel must meet before he or she is permitted to withdraw from representation [are] as follows:
>
> First, counsel must petition the court for leave to withdraw and state that after making a conscientious examination of the record, he has determined that the appeal is frivolous; second, he must file a brief referring to any issues in the record of arguable merit; and third, he must furnish a copy of the brief to the defendant and advise him of his right to retain new counsel or to himself raise any additional points he deems worthy of the Superior Court's attention.

*Id.* (citations and footnote omitted).

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

> [I]n Pennsylvania, when counsel meets his or her obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous."[11]

**Id.** at 355 n.5 (citations omitted).

Present counsel has complied with the technical requirements for seeking withdrawal. **See** Counsel's Mot. Seeking Permission to Withdraw as Counsel, 4/7/14, at ¶¶ 3-5. Moreover, his brief contains an extensive review of the record and meets the content requirement set forth in **Santiago**.

---

[11] We have stated that "frivolous is not the same as meritless; an appeal is frivolous where it lacks any basis in law or fact." **Commonwealth v. Smith**, 700 A.2d 1301, 1305 n.10 (Pa. Super. 1997) (citations and punctuation omitted); **accord Commonwealth v. Wrecks**, 931 A.2d 717, 722 (Pa. Super. 2007) ("The heightened protection afforded to **Anders** appellants . . . arises because the right to counsel on direct appeal and the right to the direct appeal itself are constitutional ones."); **Commonwealth v. Kearns**, 896 A.2d 640, 647 (Pa. Super. 2006) ("It may be that counsel believes that the argument advanced is unlikely to ultimately prevail. Nevertheless, this does not mean that the appeal is wholly frivolous.").

Therefore, we proceed to conduct an independent review of present counsel's assessment that this appeal is wholly frivolous.

First, present counsel outlines a challenge to the weight of the evidence. According to him, Appellant suggests the witnesses' trial testimony and prior statements were unworthy of belief because the witnesses admitted to lying or omitting details in their prior statements, testified inconsistently with their prior statements, and contradicted each other's prior statements and testimony. **Anders** Brief at 24-25. Appellant also asserts that Selina Williams and Charlyne Johnson lied to protect Dante Williams or another person present in the house. **Id.** at 25. Present counsel avers that Appellant's challenge to the weight of the evidence was waived. **Id.** at 22-23. We are constrained to agree.

Pennsylvania Rule of Criminal Procedure 607, in relevant part, states:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). The failure to preserve a weight of the evidence claim in the trial court requires that we find the claim waived on appeal. **Commonwealth v. Griffith**, 65 A.3d 932, 938 (Pa. Super. 2013).

As noted above, Appellant was found guilty and sentenced on February 15, 2013. The transcript of the proceedings shows that Appellant did not orally move for a new trial. Furthermore, the record contains no indication that written motions were filed before or after sentencing. Consequently, Appellant's intended arguments regarding the weight of the evidence have been waived. *See* Pa.R.Crim.P. 607(A)(1)-(3); *Griffith*, 65 A.3d at 938. Because we cannot consider this issue, we agree with present counsel's assessment that this claim is frivolous for the purposes of this appeal.

Present counsel next identifies a challenge to the trial court's denial of Appellant's request for a self-defense instruction. By way of background, trial counsel requested an instruction on justification, and the trial court ruled as follows:

> As far as justification, you can't have it both ways. You can't say my client wasn't present, it was these other guys in the house and they are putting it on him; however, if you believe he was present, it's self-defense. They're mutually exclusive theories; therefore, defense, you can't have both.
>
> If you choose your defense and it's inconsistent with self-defense, you have to live with the defense you choose. I will not be giving the self-defense charge.

N.T., 2/13/13, at 110. Present counsel notes Appellant intends to argue that he was entitled to the requested instruction on self-defense, but avers this claim is frivolous. For the reasons that follow, we agree with counsel's conclusion.

When reviewing the trial court's jury instructions,

> we are to determine "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." . . . "[Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." It is well-settled that "the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal."

*Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa. Super. 2013) (citations omitted). "Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." *Commonwealth v. Mayfield*, 585 A.2d 1069, 1070 (Pa. Super. 1991) (*en banc*).

"To sustain a conviction for murder of the first-degree, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill." *Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009) (citations omitted). Murder, generally, requires proof of malice. *Commonwealth v. Heatherington*, 385 A.2d 338, 341 (Pa. 1978); *accord Commonwealth v. Sepulveda*, 55 A.3d 1108, 1143 (Pa. 2012). The use of deadly weapon upon a vital part of the body may establish the intent to kill and malice. *Commonwealth v. Briggs*, 12 A.3d 291, 306 (Pa. 2011).

A claim of self-defense "tends to negate the malice required for murder" and the unlawfulness of the killing. *See Sepulveda*, 55 A.3d at 1143 (citation omitted); *Commonwealth v. Hilbert*, 382 A.2d 724, 731 (Pa. 1978). Section 505 of the Crimes Code defines self-defense, in part, as follows:

> **(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> **(b) Limitations on justifying necessity for use of force.**—
>
> * * *
>
> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
> > (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
> >
> > (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505(a), (b)(2)(i)-(ii).

The Pennsylvania Supreme Court has observed,

> When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

**Commonwealth v. Torres**, 766 A.2d 342, 345 (Pa. 2001) (citations omitted). Because self-defense negate elements of murder, a defendant has no burden of proving this affirmative defense. **Commonwealth v. Mouzon**, 53 A.3d 738, 743 (Pa. 2012). Rather, where any evidence gives rise to a claim that self-defense is "properly joined," the Commonwealth must disprove the defense beyond a reasonable doubt. **Id.**

"[T]he defense of self-defense necessarily requires that the appellant admit that the shooting was intentional in order to protect one's self." **Commonwealth v. Philistin**, 53 A.3d 1, 12 (Pa. 2012) (citation omitted). Similarly, this Court has held, "[W]here a defendant denies the act of using deadly force in defense of himself, he has negated one of the elements of self-defense; therefore, he may not avail himself of an instruction on justification even though evidence from other sources would be sufficient to put the claim in issue." **Mayfield**, 585 A.2d at 1075. Moreover, a defendant may not provoke or continue "the difficulty" that led to the slaying and then claim self-defense. **Mouzon**, 53 A.3d at 751 (physical fight leading to alleged need to use force did not occur spontaneously but was culmination of ongoing confrontation initiated by defendant).

Presently, we agree with the trial court that Appellant's defense strategy sought acquittal based on misidentification. Trial counsel argued misidentification by the occupants of the car and emphasized that others in the Williamses' home, including Dante Williams, could have killed Decedent. Trial counsel extensively cross-examined the Commonwealth's witnesses to suggest bias and motives to fabricate their identification of Appellant. Furthermore, Appellant did not testify. In light of this record, there was some legal and evidentiary support for the trial court's ruling that Appellant was not entitled to avail himself of self-defense because he presented a defense denying his involvement in the shooting. *See Philistin*, 53 A.3d at 12; *Mayfield*, 585 A.2d at 1074.

Although Appellant did not expressly admit shooting at the car, he did not specifically deny the charge. Moreover, the Commonwealth's own evidence—*i.e.*, the prior statements of Selina Williams and Sean Jenkins— contained Appellant's admissions that he shot at the car. Because self-defense may be raised from any evidence, we further consider whether there was a legally sufficient basis to claim self-defense in the record, assuming, as we must, that Appellant was closest to the car and was the primary shooter. *See Philistin*, 53 A.3d at 12.

Appellant, in claiming self-defense, relies on the statements of Selina Williams and Sean Jenkins to police. Selina, on January 25, 2011, gave a statement to police suggesting that Appellant, Codefendant, and Coles left

her home and returned after several minutes. When they returned to the home, Williams stated the following conversation ensued:

> I asked what was going on. They said the boys got rough and tough and we had to holler at them.
>
> *   *   *
>
> I asked them what that mean and they told me that one of the boys pulled out a gun. . . .
>
> *   *   *
>
> [Appellant] said that he asked the boy, What's up? And the guy said, What's up? Then he said he started clapping. He said that they hollered. He hollered back at them.

N.T., 2/7/13, at 48-49. Selina explained to police that "clapping" meant shooting. **Id.** at 91. She also stated, "They didn't say shooting. They said hollering. That's the way they talk." **Id.**

Sean Jenkins, on January 25, 2011, also gave a statement to police. According to Jenkins:

> So [Coles] came over with two dudes and everything was quiet for about like 20 or 30 minutes. And then they were going to roll out.
>
> So they rolled out and like in a couple of minutes they came running back in the house. They were banging on the back door. So when I let them in, they're in my living room and they're out of breath and they're telling me what just happened.
>
> [Codefendant] tells me that they were walking up the back driveway . . . and when he got to the end of the driveway, he noticed like three or four dudes sitting in a little car. And [Appellant] walked up to the car and asked the driver, What y'all doing? And then [Appellant] said that the driver started getting out of the car, and that's when

> [Codefendant] said that he and [Appellant] started shooting at the dudes in the car.
>
> [Codefendant] told me that [Coles] stayed back up in the driveway.

N.T., 2/6/13, at 29-30.

The trial record also established the following circumstances. Sean Jenkins was inside the Williamses' home and saw suspicious activity around the car near the intersection of Washington Lane and Musgrave Street. Jenkins believed the individuals were involved in the dispute between Jarrell and Dante Williams. Jenkins called Mikeal Coles, after which Coles arrived with two males, Appellant and Codefendant. Coles was aware of Jenkins's concern regarding the car. Coles, Appellant, and Codefendant then left the residence, but returned to the back door of the residence.

Thus, even accepting the suggestion that the occupants of the car "got rough," "hollered," showed a gun, or started to get out of the car, we conclude self-defense was not available. First, there was no basis in the record supporting a finding that the use of deadly force was **immediately necessary**. Rather, the evidence established Coles, Appellant, and Codefendant arrived at and stayed inside the Williamses' home before the shooting. *See* 18 Pa.C.S. § 505(a). Second, the record established Appellant, along with Codefendant, provoked the encounter with Decedent with an intent to cause serious bodily injury when they left the home with pistols and approached the car, and Appellant confronted the occupants of

- 18 -

the car. **See** 18 Pa.C.S. § 505(b)(2)(i). Thus, there was unrebutted evidence that Appellant and Codefendant were responsible for setting in motion the sequence of events that led to the confrontation with Decedent and the encounter that gave rise to his alleged need to use deadly force in self-defense. **See Mouzon**, 53 A.3d at 751.

In sum, Appellant did not admit to the shooting and his defense questioned the reliability of the evidence identifying him as the shooter. The totality of the circumstances, moreover, established that Appellant interjected himself into a volatile situation, needlessly escalated the probability of violence, and along with Codefendant, instigated the specific encounter that gave rise to the alleged need to use deadly force. Accordingly, we agree with present counsel that Appellant's request for a self-defense jury instruction lacked a basis in the governing law and the trial record.

Present counsel next identifies Appellant's intended challenge to the sufficiency of the evidence. According to counsel, Appellant believes the Commonwealth failed to establish malice in light of his assertion of self-defense. **Anders** Brief at 27. We agree with present counsel's assessment that the trial evidence established malice and rebutted any inference of self-defense.

The standard governing our review of a challenge to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence, "we view the evidence in the light most favorable to the Commonwealth as the verdict winner to determine if the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt." . . . Further, the trier of fact, in passing upon the credibility of the witnesses, is "free to believe all, part, or none of the evidence."

*Rivera*, 983 A.2d at 1220 (citations omitted). We rely on the legal principles of first-degree murder and self-defense discussed above and do not restate them here.

Instantly, Anton Johnson testified he was in the right rear seat of the car. Appellant approached the car and asked who they were. N.T., 2/5/13, at 90-91. Anton replied by asking who Appellant was. *Id.* at 91. Appellant stepped back and began shooting. *Id.* at 91. Anton identified Appellant as the shooter from a photographic array on January 31, 2011, and again identified Appellant at trial. Dion Garner, who was sitting in the left rear seat of the car sending a text message, testified he heard words being exchanged between Anton and the person who approached the car, and then heard shots. N.T., 2/11/13, at 98.

We further note the window of the right front door of the car was up, but shattered. There was a bullet hole in the lower right windshield. Bullets struck the driver's seat and the inside of the driver's side door. Decedent, who was in the driver's seat, was struck on his right side in his chest, elbow, hip, and groin. Shell casings from a .380/9mm pistol were found on the

sidewalk near the right front fender of the car. No ballistics evidence suggested that a gun was fired from inside the car.

Thus, a reading of the record in a light most favorable to the Commonwealth confirms the jury had a proper basis to find Appellant approached the car and began shooting. The evidence also established the use of a deadly weapon on a vital portion of Decedent's body such that the jury was entitled to find Appellant possessed a specific intent to kill and that the killing was unlawful and malicious. **See Briggs**, 12 A.3d at 306-07. Lastly, the evidence suggested Appellant began shooting after a brief exchange of words and no evidence supported the occupants of the car shot first. Accordingly, there was sufficient evidence to establish malice and rebut the suggested claim that Appellant acted in self-defense. **See Rivera**, 983 A.2d at 1221-22. Therefore, we agree with present counsel that Appellant's intended sufficiency argument lacked a proper basis in light of our standard of review.

The final issue discussed by present counsel is the admission at trial of evidence that Appellant could not be located by the fugitive squad and was not arrested until June 29, 2011, more than three months after the criminal complaint was filed. According to present counsel, Appellant believes this evidence was improper because the Commonwealth did not establish that he was aware he had been charged with murder. The record belies Appellant's intended argument.

It is well settled "that the admission of evidence is reserved to the sound discretion of the trial court. Our standard of review is whether the trial court abused its discretion in admitting the challenged evidence." *Commonwealth v. Lukowich*, 875 A.2d 1169 (Pa. Super. 2005) (citations omitted). Evidence of flight may be construed as evidence of guilt where "a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from law enforcement authorities." *Commonwealth v. Tha*, 64 A.3d 704, 714 (Pa. Super. 2013) (citation omitted).

Instantly, trial counsel objected to the evidence regarding the fugitive squad's efforts to locate Appellant because, *inter alia*, there was no evidence establishing he "should have constructive or actual knowledge of the existence of the warrant." N.T., 2/7/13, at 6. However, the trial record reveals that Appellant was a passenger in a vehicle involved in a traffic stop on June 29, 2011. N.T., 2/13/13, at 122-124. The arresting officer testified he asked for Appellant's name, and Appellant gave the alias "Tyree Young." *Id.* at 124. The officer searched that name in the NCIC/PCIC databases and learned that it was an alias for Appellant and that Appellant had an open warrant for homicide. *Id.* The officer confirmed the warrant was valid and took Appellant into custody. *Id.* at 124-25. The officer testified he informed Appellant he was being taken to "Homicide," and Appellant "stated that he knew what the warrant was for." *Id.* at 125. Accordingly, Appellant's

contention that there was no evidence establishing his knowledge of the warrant lacks a factual basis.

We are mindful, however, that present counsel did not address a related issue apparent on the face of the record. Specifically, the following exchange occurred prior to the resumption of trial on February 7, 2013:

> [Trial counsel:] Yesterday I was provided by counsel [for the Commonwealth] a statement from a police officer who was involved in the arrest of my client. Prior to yesterday, my impression throughout from the other paperwork, activity sheets, was that my client was arrested without incident sometime in June. The statement—the discovery I got yesterday indicates that there was a car stop. My client was asked for his I.D. He gave a fake name and then he also made a statement that he knew that he had a warrant out for him, which are, obviously, things that I would anticipate the Commonwealth introducing to show consciousness of guilt.
>
> I feel that I'm prejudiced at this point if this is to come in. We opened. I was not able to address this in my opening, which I certainly would have done had I been aware of it, to have it introduced at this late stage of the game, I think is certainly prejudicial to my client.
>
> \* \* \*
>
> [Commonwealth]: I didn't address it in my opening either. The time to address it is in the closing. It doesn't indicate there was a warrant issued or he said he knew what the warrant was for. I would—this would be characterized with incident or without incident. It was a car stop, basically, based upon a vehicle going down— [Appellant] was a passenger who identified himself as Tyreese Young. The vehicle was going down the wrong way. The radio checked the alias for the defendant and confirmed he had a warrant on him.
>
> There is no prejudice here simply because no one opened on this, nobody had any information.

THE COURT: Backup about prejudice.

There are discovery rules; you agree with that right?

[Commonwealth]: Absolutely. It was an oversight. It wasn't in the right folder, I didn't find this until the night before yesterday when I was going through the folder looking for the phone information. That's the first time I found it. I subpoenaed the officers simply because I knew they were the arresting officers.

The circumstances, though, unfortunately, were not logged in tremendous detail on the Fugitive Squad activity sheets.

THE COURT: When was he arrested compared to when the homicide happened?

[Commonwealth]: Arrested June 29, 2011. The warrant is issued March 7, 2011.

THE COURT: Did the Fugitive Squad have the warrants?

[Commonwealth]: Absolutely. Did they go out to the house? Many times. All the activity sheets that is documenting efforts —

THE COURT: They're going—so you intend to show consciousness of guilt anyway?

[Commonwealth]: Absolutely.

THE COURT: So what is the prejudice? He knows he has a warrant. So what they're going to show that.

[Trial counsel]: They're going to testify as to the efforts they made to serve the warrant. But I don't think anyone—they ever came in contact with a—over this three-month period ever said that my client was actually living there or that they knew where he was to show that he should have constructive or actual knowledge of the existence of the warrant.

[Commonwealth]: Certainly we can argue that.

THE COURT: We have a couple of days left. If you figure out how you want to cross-examine on that, you have time. You have notice now. There is flight any way.

[Commonwealth]: The issue is that this is a statement taken from him while he was in custody. There would be a motion to suppress issue involved.

\* \* \*

THE COURT: Did anybody ask him[.] Do you know you're wanted, or did he just say—

[Commonwealth]: It's not clear.

THE COURT: This is not a motion to suppress a statement. No. You have notice of flight here. It doesn't really add to anything. You have notice now. You didn't need to open on it, as long as you can close on it. You can cross-examine. It's coming in.

N.T., 2/7/13, at 4-7. We address independently the issues of the discovery violation and the trial court's determination of an appropriate remedy. *See Santiago*, 978 A.2d at 355 n.5.

"[D]ecisions involving discovery in criminal cases lie within the discretion of the trial court. The court's ruling will not be reversed absent abuse of that discretion." *Commonwealth v. Smith*, 955 A.2d 391, 394 (Pa. Super. 2008) (*en banc*) (citations omitted). "[A] discovery violation does not automatically warrant relief in the form of a new trial. A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery does not automatically entitle a defendant to a new

trial." ***Commonwealth v. Hood***, 872 A.2d 175, 181 (Pa. Super 2005) (citations, emphasis, and punctuation omitted).

Instantly, the trial court found Appellant was on notice that the Commonwealth could admit flight and concealment evidence at trial based on the fugitive squad activity sheets that were disclosed in pretrial discovery. Discovery regarding Appellant's statement to the arresting officer was belated but provided at trial on February 6, 2013, and the testimony regarding Appellant's statements at his arrest was presented almost one week later on February 13th. The trial court implicitly accepted the Commonwealth's argument that the belated discovery of Appellant's statement to the officer was an oversight and not a deliberate tactic.[12]

Trial counsel's sole claim of prejudice was that he was not able to present opening arguments regarding Appellant's statements. Trial counsel did not formally request suppression of the new evidence. Furthermore, we discern no basis in the record to conclude that Appellant's primary defense strategy of misidentification was affected by the late disclosure of his use of an alias or his statement that he was aware of the nature of the warrant.

Following our review, we conclude the record supports the trial court's determination that Appellant had notice the Commonwealth could introduce

---

[12] It is anomalous, however, that the Commonwealth stated that it intended to present concealment or flight evidence before the belated discovery of the officer's report of the traffic stop, but did not outline such evidence in its opening statement.

evidence of consciousness of guilt. Moreover, we discern no abuse of discretion in the trial court's determination that the prejudice associated with the evidence from the traffic stop was not so severe as to exclude the late discovered evidence. Trial counsel did not formally seek suppression of the evidence obtained as a result of the traffic stop and the NCIC/PCIC search, or assert prejudice beyond his inability to make opening arguments regarding consciousness of guilt evidence. Thus, under the totality of the circumstances, we conclude that the trial court's ruling on the discovery violation and choice of remedy did not constitute reversible error. *See Hood*, 872 A.2d at 181.

Thus, following our independent review, we agree with present counsel's assessment that Appellant's intended issues were frivolous. As we discern no non-frivolous issues preserved in this appeal, we affirm and grant counsel's petition to withdraw from representation.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2015